IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** § | |
| **BRAZOS LICENSING AND** § | **CIVIL ACTION 6:20-cv-00454-ADA** |
| **DEVELOPMENT,** § | **CIVIL ACTION 6:20-cv-00455-ADA** |
| *Plaintiff,* § | **CIVIL ACTION 6:20-cv-00456-ADA** |
| § | **CIVIL ACTION 6:20-cv-00457-ADA** |
| § | **CIVIL ACTION 6:20-cv-00458-ADA** |
| § | **CIVIL ACTION 6:20-cv-00459-ADA** |
| v. § | **CIVIL ACTION 6:20-cv-00460-ADA** |
| § | **CIVIL ACTION 6:20-cv-00461-ADA** |
| § | **CIVIL ACTION 6:20-cv-00462-ADA** |
| § | **CIVIL ACTION 6:20-cv-00463-ADA** |
| **MICROSOFT CORPORATION,** § | **CIVIL ACTION 6:20-cv-00464-ADA** |
| *Defendant.* § | **CIVIL ACTION 6:20-cv-00465-ADA** |

## JOINT MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER

**TO THE HONORABLE COURT:**

The parties jointly move for entry of a protective order. While the parties have reached agreement on most items, three items remain in dispute. The parties' respective positions are summarized briefly below. A proposed protective order with the disputes highlighted is attached as Exhibit A.

| **Plaintiff's Proposal** | **Defendant's Proposal** |
|---|---|
| The receiving Party shall not print more than 1000 pages for each software release. | The receiving Party shall not print more than ten (10) consecutive pages of continuous Source Code. The receiving Party may request permission to print additional consecutive pages of continuous Source Code. Such requests shall not be unreasonably denied by the producing Party. In addition, the receiving Party shall be limited to printing a total of two hundred and fifty (250) pages of Source Code per case, a page being defined as an 8.5" x 11" paper page with 1.25" margins and using no smaller than a 12-point font. |

I.      **Plaintiff's Position**

This Court's working group draft of a standard protective order contains no limits on the number of source code printouts. Similarly, the standard EDTX protective contains no limit on such printouts – relying instead on a "reasonable number." [1] Microsoft has previously agreed to protective orders with no specified limits. *See* e.g., *Seed Spring, et al. v. Microsoft Corporation*, Case No. 6:17-cv-427 (E.D. Tex.)(Aug. 24, 2017)[2] and *Soverain IP, LLC v. Microsoft Corporation*, Case No. 2:17-cv-204 (E.D. Tex.)(Aug. 23, 2017).[3] Because Microsoft insists on a presumptive limit as opposed to a "reasonable number," WSOU agreed to the same language Microsoft previously agreed to in *Dynamic Data Technologies v. Samsung Electronics, et al*, Lead Case No. 2:18-cv-459 (E.D. Tex.)(April 24, 2019),[4] namely 1,000 pages per software release. Microsoft rejected WSOU's Offer. WSOU alternatively offered a presumptive page limits based on 2% of the source code. Again, Microsoft rejected WSOU's proposal.

Microsoft's proposal of 250 pages total per case should be rejected for several reasons.

First, Microsoft represented to the Court that source code was important – the "definitive source of evidence." This representation was made in a hearing before the Court on November 30, 2020. WSOU requested this hearing because Microsoft only provided access to source code instead of producing technical documents like requirements documents or engineering notes. Microsoft argued that these technical documents needed not be provided because "there's one definitive source of evidence for what software does, and that is its source code." Hearing Tr. at 03:34. Now, despite this representation, Microsoft seeks to limit the ability to print out such a "definitive source of evidence."

---

[1]See
https://www.txed.uscourts.gov/sites/default/files/judgeFiles/Sample_Protective_Order_Patent_Cases_%28April%202019%29.docx  ("The receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, all of which shall be designated and clearly labeled "RESTRICTED CONFIDENTIAL SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied.")
[2] Dkt. No. 173 (Agreed Protective Order) and Dkt. No. 173-1 (Proposed Order reciting "a reasonable number of printouts and photocopies of Source Code Material . . . ").
[3] Dkt. No. 14 (Agreed Protective Order) and Dkt. No. 14-1 (Proposed Order reciting "a reasonable number of printouts and photocopies of Source Code Material . . . ").
[4] Dkt. No. 76 (Joint Motion for Agreed Protective Order) and Dkt. No. 76-1 (Proposed Order reciting "[n]o more than 1000 pages of Total Source Code Material (not including copies of original printouts) for any software release . . . ").

Second, as noted above, Microsoft already agreed to the exact same limits in an earlier case. WSOU provided that case to Microsoft in the meet and confer process. Microsoft has neither provided a good reason for the artificial page limit in this case nor explained how earlier *Dynamic Data* case is different.

Third, WSOU's experts have spent months reviewing the large volume of code produced by Microsoft and can affirmatively state that 250 pages is not enough to document the operation of the Accused Instrumentalities. There are often multiple versions of the code and multiple modules used in operation. Limiting the ability to print out this evidence severely prejudices WSOU. This is why WSOU alternatively suggested some percentage of the code (e.g., 2%). Microsoft also rejected that – and any other reasonable tether to the amount of code.

Fourth, Microsoft's contention that WSOU can simply extend this 250-page limit upon a showing of "good cause" should likewise be rejected. WSOU is already there and is unable to print out the source code from the computers until this issue is resolved. Microsoft has offered no alternatives to account for the large volumes of source code it made available for inspection or the multiple versions of the software.

Microsoft's separate requirement limiting the number of consecutive pages to ten (10) should also rejected. WSOU has already agreed to an overall presumptive limit on pages (1,000); and, Microsoft has provided no good reason for imposing the limiting consecutive page count. As WSOU's experts can attest, relevant source modules in this case already exceed ten (10) pages – meaning that the parties would have to return to the Court for permission to actually print out such relevant modules should Microsoft refuse to allows such pages to be print out. If the Court is inclined to impose a consecutive page count limit for this case, it should be something more reasonable – 50 pages.

Finally, Microsoft proposes defining the parameters of a "page." WSOU does not see this as necessary and is concerned that this another attempt by Microsoft to decrease WSOU's ability to use what Microsoft, again, called the definitive source of evidence. For example, the default

"margin" for Microsoft's own word processing program, Word, is one-inch.[5] Likewise, this Court requires briefs to have one-inch margins.[6] Yet, Microsoft want to decrease page size only have 1.25-inch margins. On font-size, cannot possibly guess whether 12-point font might be appropriate for every scenario. Rather than specifying page sizes, the parties should simply be reasonable on print requests.

**II.      Defendant's Position**

Microsoft's proposal reflects the parties' original agreement that a total of 250 pages of Source Code may be printed per case, subject to reasonable requests for permission to print additional pages. The parties have agreed that WSOU may request permission to print additional pages, which shall not be unreasonably denied. Despite having agreed to the 250 pages per case limit during the parties' first round of meet and confers over the protective order, WSOU has reneged on the agreement and now seeks 1000 pages for each "software release," which is both undefined and excessive. It is not clear what WSOU believes constitutes a "software release" or why it believes each "software release" should entitle it to another 1000 pages of Source Code printouts. As software products evolve, code is reused and updated only as needed. Even assuming, *arguendo*, that WSOU intends to count each top-level Source Code folder made available for production as a "software release," this will result in an excessive number of printouts. For example, for Xbox alone (Case Nos. 6:20-cv-455 and -457), there are at least 8 top-level folders that have been made available for inspection, which under WSOU's proposal would entitle it to at least 8,000 pages of printouts. This is not proportional to the needs of these cases,

---

[5] https://support.microsoft.com/en-us/office/change-the-margins-in-your-word-document-c95c1ea1-70b1-4dde-a1da-f5aa2042c829
[6] https://www.txwd.uscourts.gov/court-information/frequently-asked-questions/

*Joint Motion for Entry of*
*Disputed Protective Order*                               Page | 4

where WSOU accuses very specific functionality within the software products, and unreasonably puts Microsoft's proprietary Source Code at risk.

In addition, WSOU's proposal does not limit the number of consecutive pages of continuous Source Code that may be printed, leading to the possibility that, under its proposal, it could simply print 1000 pages of Source Code for further and extensive review away from the protections provided by the Source Code computers. The reason to limit the number of consecutive pages is simple. Even with a Protective Order in place, there is some risk of disclosure to unauthorized persons. Any disclosure of Source Code will cause competitive harm to Microsoft, but disclosure of considerable sections of consecutive pages exponentially increases that risk. Accordingly, Microsoft proposes a reasonable limitation of 10 consecutive pages. To the extent WSOU reasonably believes a section of more than 10 consecutive pages is critical to make out its case, Microsoft is willing to engage with WSOU in good faith to increase the number of consecutive pages on a case-by-case basis. Microsoft's proposal strikes a balance between allowing WSOU the printouts it needs for its case, while safeguarding Microsoft's intellectual property for core software products.

| Plaintiff's Proposal | Defendant's Proposal |
| --- | --- |
| [d]uring the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person **last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL**, whichever is earlier. | [d]uring the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person has **terminated their involvement in this Action by filing of a notice of withdrawal with the Court**, whichever is earlier. |

I.   Plaintiff's Position

WSOU proposed often-used language in prosecution bars concerning an alternative time period when a prosecution bar should no longer apply to a person -- "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL." This language reflects the

simple fact that memories fade over time and that the principal expiration clause, which is tied to the case ending (including the appeals), can go on for years. This same language has either been agreed to by parties or used by Courts in at least the following cases:

- **13 Cases**: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-491-504-JRG-RSP (E.D. Tex.)(Jun. 14, 2019) ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- **5 Cases**: *Uniloc 2017, LLC v. Google LLC*, Case Nos. 2:18-cv-548, 550-553-JRG (E.D. Tex.)(Jul. 2, 2019)( "two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . .")
- *Kojicast, LLC v. Funimation Productions, LLC*, Case Nos. 2:19-cv-132 (E.D. Tex.)(Jul. 19, 2019)("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Keurig, Incorporated v. Sturm Foods, Inc.*, Case No. 10-841-SLR-MPT (D. Del.)(July 6, 2001)("two years after that person's last review of the Designated Material")
- *Uniloc 2017, LLC v. Kaspersky Lab, Inc.*, Case No. 2:19-cv-219-JRG (E.D. Tex.)(Nov. 19, 2019)( ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Kik Interactive, Inc.*, Case No. 2:19-cv-150-JRG-RSP (E.D. Tex.)(Aug. 11, 2020)( ("two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Uniloc 2017, LLC v. Riot Games, Inc.*, Case No. 2:19-cv-223-JRG (E.D. Tex.)(Mar. 19, 2020)(two years after such person last reviewed the HIGHLY SENSITIVE TECHNICAL MATERIAL . . . ")
- *Pass & Seymour, Inc. v. General Protecht Group, Inc. et al.*, Case No. 5:077-cv-833 (N.D. N.Y.)(Dec. 21, 2011)("for a period of eighteen months (18) months from his or her last review of such information.")
- *Prism Technologies v. Research in Motion, Ltd el al*, Case No. 8:08-cv-537 (D. Neb)(Feb. 9, 2010)("two years (for examination prosecution and support) after that person's last review of the designated information . . . ").
- *WM Wrigley Jr. Co, v. Cadbury Adams USA*, Case No. 2:04-cv-346 (N.D. Ill.)(Jan. 21, 2005)("three years after that person's last review of the designated information . . .")
- *Vest Corporation v. Amdocs Management Limited et al.*, Case No. 3:14-cv-1142 (D. Ore.)(Feb. 21, 2017)("two years after the person last reviews the source code . . . ").

Microsoft agreed in principle but rejected such language, arguing that it is difficult to track when a person "last reviewed." Accordingly, Microsoft proposed using a "notice of withdrawal" as a trigger. This proposal should be rejected for the simple fact that it ignores non-attorneys like paralegals and experts that will also have access to confidential information. These people neither appear nor withdraw; and, accordingly, this alternative clause is inapplicable to them. The mere fact that it may be difficult to track when one last accessed confidential information is not a good

reason to reject this language. Indeed, Microsoft agreed to the "last review" language as a third party in *Sun Microsystems, Inc. v. Network Appliance, Inc.*, Case No. 3:08-cv-1641 (N.D.Ca.) (Nov. 30, 2019))("beginning upon the person's first review of Microsoft code and ending two years after (1) that person's last review of Microsoft code . . . ").[7] And, all the parties in the cases above used the "last review" – type language.

## II.     Defendant's Position

WSOU's proposal provides that the prosecution bar no longer applies if two years have passed since such person has reviewed highly sensitive technical material.  WSOU's proposal does not provide a person who has reviewed highly sensitive technical material with certainty that he or she is not inadvertently violating the provisions of this protective order.  As a practical matter, it is not possible to track or monitor when a person last reviewed such material, as dates of access are not required to be logged or tracked.  Microsoft's proposal, which is keyed off of the filing of a notice of withdrawal with the Court, provides a date certain that can be more readily tracked and enforced.

| **Plaintiff's Proposal** | **Defendant's Proposal** |
| --- | --- |
| In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:<br><br>promptly, **no later than three (3) business days after such an obligation is discovered**, notify in writing the Requesting Party and the Non-Party simultaneously  that some or all of | In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:<br><br>promptly notify in writing the Requesting Party and the Non-Party simultaneously  that some or all of the information requested is subject to a confidentiality agreement with a Non-Party; |

---

[7] In this case, Microsoft agreed to "whichever is later date" as opposed to a "whichever is earlier" date.  Microsoft, however, did agree to use the proposed "last review" date as a trigger.

*Joint Motion for Entry of*
*Disputed Protective Order*              *Page | 7*

| | |
|---|---|
| the information requested is subject to a confidentiality agreement with a Non-Party | |

### I. Plaintiff's Position

The final dispute concerns whether a specific number should be inserted for an obligation concerning promptness in Paragraph 13, 1(a). The particular paragraph deals with an inability to produce third-party information due to existing confidentiality agreements. The parties agree that these third parties should be contacted "promptly" but disagree whether a time should be included. WSOU proposed three business days after an obligation is discovered. Microsoft suggests no date – suggesting that they believe something longer than three days is appropriate. WSOU's proposal provides objectivity in the otherwise relative and subjective term "promptly," which hopefully reduces any chance of further dispute arising from this term.

This entire clause was included at the request of Microsoft. WSOU agreed; however, WSOU believes there should be some period defined that is "prompt." WSOU has also been open to other suggestions.

### II. Defendant's Position

WSOU's proposal to require notification to non-parties of potential production of non-party confidential information within three business days "after such an obligation is discovered" is neither enforceable nor practical. WSOU does not define when "an obligation is discovered." WSOU's proposal is not enforceable, as there is no way for the requesting party to know when the producing party first discovered that it needed to provide notice to a non-party regarding the non-party's confidential information such that three business days could be precisely tracked. WSOU's proposal is also impractical, inefficient, and unnecessarily burdensome. If, for example, a party spends two weeks reviewing a collection of documents for production, in which information of a particular non-party appears at both the beginning and the end of the set, under

WSOU's proposal the party will have to send multiple notice letters to the same non-party. This unnecessarily burdens both the producing party and the non-party with serial notice letters. Microsoft's proposal, which requires prompt notification to non-parties, avoids unnecessary delays in the production of non-party confidential information without setting forth impractical and unenforceable deadlines.

DATED:  March 29, 2021  Respectfully submitted,

By:  */s/Ryan S. Loveless*
Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
**Law Firm of Walt, Fair PLLC.**
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296
Brett A. Mangrum
Texas State Bar No. 24065671
Jeffrey Huang
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Brett@EtheridgeLaw.com
JeffH@EtheridgeLaw.com

*Counsel for Plaintiff WSOU Investments, LLC*


DATED:  March 29, 2021  Respectfully submitted,

By:  */s/ Brooke Boll*
Barry K. Shelton
Texas State Bar No. 24055029
SHELTON COBURN LLP
311 RR 620 S, Suite 205
Austin, TX 78734
Telephone: (512) 263-2165
Fax: (512) 263-2166

bshelton@sheltoncoburn.com

Michael J. Bettinger
Irene Yang
SIDLEY AUSTIN LLP
555 California St., Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Fax: (415) 772-7400
mbettinger@sidley.com
irene.yang@sidley.com

Richard A. Cederoth
John W. McBride
SIDLEY AUSTIN LLP
1 South Dearborn St.
Chicago, IL 60603
Telephone: (312) 853-7000
Fax: (312) 853-7036
rcederoth@sidley.com
jwmcbride@sidley.com

*Attorneys for Defendant Microsoft Corporation*